THE PEOPLE ex rel. WM. B. STEPHENS, Supervisor of the Town of Fremont, Respondent, *v.* PETER HALSEY, Treasurer of Steuben County, Appellant.

*Board of Assessors—County Treasurer—Judicial and Ministerial Officers—Assessment Rolls—Mandamus—Relator.*

The duty of assessors in determining the amount to be entered upon the tax roll is a *judicial one.* The duty of the County Treasurer to issue his warrant for the collection of such tax is *ministerial.*

The determination of the assessors is conclusive until set aside by a proceeding legally instituted for such purpose, and it is not within the authority of the County Treasurer to disregard such determination and refuse to issue the proper warrant for the collection of the tax.

The writ of mandamus may in a proper case issue against the County Treasurer, requiring him to issue his warrant, &c., on the relation of a private citizen who has an interest in having such tax collected.

THIS is an appeal from an order entered at the General Term of the Supreme Court, in the Seventh District, on the 28th of May, 1867, affirming an order of the Special Term, directing a mandamus to issue to compel the Treasurer of Steuben county to issue his warrant for the collection of a certain tax.

A certain B. F. Young, agent in the county of Steuben for William, Earl of Craven, Alexander Oswald, and Edmund B. Estcourt, non-residents of the State, made out and delivered to the Defendant, as County Treasurer, a sworn statement of the debts due to them, in twenty-five different towns in Steuben county, as required by section 2 of the laws of 1851 (p. 722). This statement purported to be "the true account of all debts owing" to said Craven, Oswald and Estcourt, "which are liable to taxation under said act."

In that statement the amount of debts due from persons in the town of Fremont was stated at $6,505.

This statement was delivered by the Treasurer to the assessors of the said town, and they, within the time in which they were required by law to complete their assessment-roll for the year 1865, entered on said roll the names of the said non-residents, and the sum of $50,000 as being the aggregate amount due them in the

town of Fremont. In regard to this valuation of the indebtedness, the affidavit of Daniel Brownell, one of the assessors of the town of Fremont, states that the amount so entered on said roll was the amount of debts owing to these non-residents, according to the best information which the assessors could obtain ; that such information was derived partly from the personal inquiries of the deponent, and that the assessors, in making said assessment, designed to enter on the roll such an aggregate amount (although somewhat less than the actual amount), as would be a fair valuation, compared with the assessment of other personal and real property liable to assessment in said town.

The tax upon this assessment of $50,000, amounting to the sum of $2,126.98, not having been paid, the County Treasurer declined to issue his warrant for its collection, upon the ground, as stated by him in his affidavit, that " it appeared that said tax was levied on an assessment of $50,000, instead of upon $6,505, which was the amount returned by the agent to deponent, and by deponent to said assessors."

An application was accordingly made to the Supreme Court, by William B. Stephens, the Supervisor of the town of Fremont, that a writ of mandamus issue directed to Peter Halsey, the said Treasurer, commanding him to issue his warrant to the Sheriff of Steuben county, or any county of this State where any debtor of such non-residents resides, commanding him to make of the goods and chattels and real estate of such non-residents the amount of such taxes required by law.

This application was granted by the Special Term, by an order entered July 28th, 1866, which order was affirmed by the General Term, from which decision the appeal is taken to this Court.

*Hakes & Stevens* for Respondent.

*George S. Jones* for Appellant.

FULLERTON, J.—The statement furnished by the agent Young, in compliance with the " act to subject certain debts owing to non-residents to taxation " (Laws of 1851, chap. 371, p. 721), was not conclusive on the assessors, and it was their right, and, if they

suspected its accuracy, their duty, to go beyond it, and ascertain by means of other agencies the amount of the debts subject to taxation, under the provisions of the law referred to.

By that act the agent was required to return " all debts *owing* by inhabitants to persons not residing within the United States."

Instead of this, however, the statement furnished purported to be " a true account of all debts owing, which are *liable to taxation* under said act." This was a palpable evasion of the statute. It was not for the agent to constitute himself the judge of what debts were liable to taxation, and, in so doing, he made it necessary for the assessors to seek elsewhere for the information he had withheld. Whether the amount which they taxed was in excess of the amount actually due, is a question not before the Court.

In determining that amount, the assessors acted judicially (Van-Rensselaer *v.* Witbeck, 7 Barb. 133 ; same *v.* Cottrell, ib. 129 ; Bloom *v.* Burdick, 1 Hill, 130) ; and their assessment was conclusive, until set aside by a proceeding instituted for that purpose. At all events it was not in the power of the County Treasurer to question its accuracy or legality, when called upon to issue his warrant for its collection. His duty was purely ministerial in its character, and could not be mistaken.

His disregard of the judicial determination of a body constituted for that purpose, and his attempt to substitute for it his own unauthorized judgment, are highly reprehensible, and should not pass without rebuke. Such conduct is subversive of good order, and detrimental to the public interests. The writ of manda-mus may, in a proper case, and in the absence of an adequate remedy by *action,* issue on the relation of a private individual, to redress a wrong personal to himself, or on the relation of one who, in common with all other citizens, is interested in having some act done, of a general public nature, devolving as a duty upon a public officer or body who refuse to perform it.

The collection of a tax legally assessed, in which all the inhabitants of any political division of the State have a common interest, is an instance of this character, and such collection may be enforced by any one of such citizens. It follows, therefore, that

Stephens, being a citizen and tax-payer of the county of Steuben, was properly made a debtor in this case. This rule was adopted in the case of the People *v.* Collins (19 Wend. 56)—a well-considered case—and has since been frequently followed.

(The People *v.* Board of Supervisors, 18 How. Pr. R. 463; same *v.* Tracy, 1 id. 186; same *v.* Supervisors of Niagara County, 4 Hill, 20; same *v.* Supervisors of Chenango County, 8 N. Y. 317.).

Prior to the case of The People *v.* Collins (supra), there was no settled practice in this State on this subject; and the rule there adopted, though differing from that which prevails in many of the other States, seems to be a reasonable one, and in many instances actually necessary to obtain speedy redress for wrongs affecting the public interests.

· It might with propriety be said in this case that the county, as the trustee of the people, and as such trustee entitled to the money in question, was the sufferer; and that, inasmuch as by statute, "all acts and proceedings by or against a county, in its corporate capacity, shall be in the name of the Board of Supervisors of such county" (1 R. S. 846, § 3), that, therefore, that body should have been the Relator in a proceeding by mandamus to compel the collection of the taxes assessed for its benefit. That the county, through its Supervisors, might have properly acted in that capacity, is not denied; yet, to adopt the rule that no citizen could so act, would be imposing an unnecessary burden on the county, and involve unnecessary delay in redressing its wrongs. To convene so large a body as a Board of Supervisors, for extraordinary purposes, would be attended with great inconvenience to individual officers, and entail a large expense upon the people. Inasmuch as the people themselves are the Plaintiffs in a proceeding by mandamus, it is not of vital importance who the Relator should be, so long as he does not officially intermeddle in a matter with which he has no concern.

The office which a Relator performs is merely the instituting a proceeding in the name of the people, and for the general benefit. The rule, therefore, as it is sometimes stated, that a Relator, in a writ of mandamus, must show an individual right to the thing

asked for, must be taken to apply to cases where an individual interest is alone involved, and not to cases where the interest is common to the whole community. This is the rule adopted in many of the States (Hamilton *v.* The State, 3 Ind. 452; S. C. 10 id. 8 ; State *v.* County Judge, 7 Iowa, 186 ; State *v.* Bailey, ib. 390 ; Comrs. of Pike County *v.* State, 11 Ill. 202). The rule is different in other States (Heffner *v.* The Commonwealth, 28 Penn. State Rep. 108 ; The People *v.* the Regents of the University, 4 Mich. 98 ; The People *v.* The Inspectors of State Prisons, ib. 187 ; Arberry *v.* Beavers,. 6 Texas, 457 ; Sanger *v.* Commissioners of Kennebec, 25 Maine, 291). But the practice which has so long prevailed here, though never, so far as I can discover, passed upon directly by the Court of last resort, where the objection was raised, seems to be a reasonable and convenient one, and ought now to be considered as settled.

This in no way conflicts with the decision of this Court in the case of Doolittle *v.* The Supervisors of Broome County (18 N. Y. 155), where it was held that an *action* could not be maintained by a person having no interest other than that which was common to all the freeholders of a town, to have the act of a Board of Supervisors, in erecting a new town, declared void.

That case was properly so decided. The difference between a case where an individual acts as Relator, or representative of the people, to redress a public wrong by mandamus, and one where it is sought to accomplish the same result by an individual, in an action brought in his own name, is strikingly apparent.

The order should be affirmed, with costs.

The Court were unanimous in approving the order, but they did not pass upon the question whether the statement furnished by the agent to the assessors was conclusive as to the amount to be taxed.

All concur.

Affirmed.

JOEL TIFFANY,
State Reporter.